## IN THE MATTER OF JEREMIAH V. LUONGO.

Suffolk. September 9, 1993. - October 29, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Commingling of funds, Suspension.

An indefinite suspension from the practice of law was the appropriate dis-
cipline to be imposed on an attorney who engaged in multiple violations
of his professional obligations, two of which standing alone, intention-
ally depriving a client of the use of her funds and associating with a
nonlawyer in the unauthorized practice of law, justified the sanction.
[308-309, 310-312]

Statement that the discretionary authority of this court and the Board of
Bar Overseers cannot properly be restricted by the circumstance of a
joint stipulation of facts between bar counsel and the attorney in a bar
disciplinary proceeding. [312-313]

INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on January 4, 1993.

The case was reported by *Abrams*, J.

*Gerald M. Kirby* for the respondent.

*Karen D. O'Toole*, Assistant Bar Counsel.

WILKINS, J. In this bar discipline proceeding, which is
before us on a reservation and report by a single justice of
this court, the Board of Bar Overseers (Board) has recom-
mended an indefinite suspension of Jeremiah V. Luongo (at-
torney). An order of temporary suspension of the attorney
was entered by agreement on January 27, 1993.

The facts, to which the attorney and bar counsel stipu-
lated, show that the attorney mingled a client's funds with
his own and that he intentionally deprived his client of the
use of her funds, although only temporarily. Moreover, the
attorney failed promptly to turn funds over to his client and
to maintain appropriate records of his receipt, maintenance,

and disposition of that client's funds.[1] In its decision, by a 9 - 1 vote, explaining why it recommended an indefinite suspension and rejected the three-year suspension recommended jointly by the attorney and bar counsel, the Board correctly stated that "[t]he presumptive sanction for an attorney who intentionally uses client funds with intent to deprive (temporarily or permanently), or with actual deprivation, is disbarment or indefinite suspension. *Matter of Discipline of an Attorney*, 392 Mass. 827, 836-837 (1984) (hereinafter cited as *Three Attorneys*); *Matter of Dawkins*, 412 Mass. 90, 93 (1992). The Court placed a 'heavy burden' on the attorney to demonstrate that a lesser sanction than disbarment or indefinite suspension is warranted. *Dawkins, supra*, 412 Mass. at 93, citing *Three Attorneys, supra*. The Court has routinely imposed indefinite suspension when a lawyer knowingly deprived his client of funds even temporarily."[2] We shall return to the question whether the attorney has met his "heavy burden" to demonstrate that a sanction less than an indefinite suspension should be imposed.

The Board next considered the fact that from March, 1990, until the spring of 1991, the attorney associated in the practice of law with one James Ryan, who falsely held himself out as admitted to practice in the Commonwealth. Ryan had been convicted of larceny of client funds and in 1985 had resigned from the Connecticut bar. The attorney learned of Ryan's status in November, 1990, but continued to associ-

---

[1]The attorney agreed that his conduct had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981); S.J.C. Rule 3:07, Canon 9, DR 9-102 (A) and (B), as appearing in 382 Mass. 795 (1981).

[2]As support for this later statement, the Board cited the following opinions of single justices of this court: *Matter of Murch*, 7 Mass. Att'y Discipline Rep. 199 (1991); *Matter of Ridge*, 6 Mass. Att'y Discipline Rep. 268 (1990); *Matter of Worthen*, 6 Mass. Att'y Discipline Rep. 333 (1990); *Matter of Silvey*, 6 Mass. Att'y Discipline Rep. 306 (1989); *Matter of Coughlin*, 1 Mass. Att'y Discipline Rep. 79 (1978). To these cases can be added *Matter of Hanlon*, S.J.C. No. 92-044-BD (March 10, 1993).

ate with him.[3] Funds that Ryan received were deposited to the firm's account and were used to pay the firm's expenses and to compensate the attorney. Moreover, the Board noted that because the attorney failed to supervise Ryan, Ryan was able to defraud clients and convert their funds. At the same time, the attorney neglected clients' cases.[4] The Board concluded that an indefinite suspension was warranted for the attorney's association with Ryan.[5]

The Board also relied on the attorney's failure to cooperate with bar counsel. The attorney agreed that he had failed to respond to bar counsel's inquiries, a factor that should be considered in the selection of the appropriate sanction. See *Matter of Garabedian, ante* 20, 24-25 (1993). Finally, the Board noted that the attorney had been subject to prior discipline, a private reprimand in 1986, for taking an excessive fee and for neglecting to pursue a divorce complaint. See 5 Mass. Att'y Discipline Rep. 447 (1986). Prior discipline is a relevant factor in selecting the appropriate disciplinary sanction. *Matter of Dawkins, supra* at 96-97, and cases cited.

---

[3]The attorney agreed that, in associating with Ryan, he had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981); and S.J.C. Rule 3:07, Canon 3, DR 3-101 (A), 3-102 (A), and 3-103, as appearing in 382 Mass. 777 (1981).

[4]The attorney admitted, as to this misconduct, to violations of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981); and S.J.C. Rule 3:07, Canon 9, DR 9-102 (A) and (B), as appearing in 382 Mass. 795 (1981).

[5]It relied on *Matter of DiCicco*, 6 Mass. Att'y Discipline Rep. 83, 89-92 (1989), in which the attorney, who did not profit from his association with a nonlawyer, was suspended for two years for facilitating the unauthorized practice of law and for other disciplinary violations, and on *Matter of Flak*, 6 Mass. Att'y Discipline Rep. 118 (1990), in which the attorney was disbarred for a variety of missteps, including sharing fees and forming a partnership with a nonlawyer. See *Matter of Garfinkle*, 2 Mass. Att'y Discipline Rep. 83 (1981) (two-year suspension for presenting out-of-State lawyer as qualified to practice in Massachusetts; Board recommended disbarment).

The facts that the attorney had improperly associated with a nonlawyer in the practice of law in the circumstances, that he had neglected the cases of various clients, that he had failed to cooperate with bar counsel, and that he had been subject to prior discipline, of course, do nothing to help the attorney meet his burden of showing that an indefinite suspension is not warranted because of his misuse of clients' funds. These facts, of course, all point in the other direction. See *Matter of Saab*, 406 Mass. 315, 326-327 (1989) (consideration of cumulative effect of violations proper). Indeed, standing alone, the attorney's knowing participation in the practice of law with Ryan warrants at least a suspension from the practice of law, where the attorney obtained financial gain from the association and clients were defrauded. See ABA Standards for Imposing Lawyer Sanctions §§ 7.1 & 7.2 (1992) (ABA Standards).[6]

In mitigation, the attorney points to assistance that he gave to the client from whom he temporarily deprived funds and to the fact that he eventually paid her $4,846 more than he owed her.[7] He also points to the fact that in November, 1989, he entered a treatment facility for people with substance abuse problems. There is no basis in the record, however, from which one could conclude that the attorney's alcoholism was a cause of any of his disciplinary violations. The attorney argues further that an indefinite suspension at his age is tantamount to a "life sentence."[8] We have never rec-

---

[6] In asserted mitigation on this point, the stipulation states that the attorney met Ryan as a result of a referral from Lawyers Concerned for Lawyers. "Ryan held himself out as an attorney and shared office space with other attorneys in Boston. While the [attorney] acknowledges that he did not take any steps to verify Ryan's status as an attorney in Massachusetts, it did not occur to him that Ryan was not what he presented himself to be until well into the summer of 1990. The [attorney] did not learn that Ryan was not a member of the Massachusetts or Connecticut bars until November 1990."

[7] The stipulated facts suggest that the overpayment may have been the result of the attorney's poor record-keeping.

[8] The attorney's age does not appear in the record. He was admitted to the bar in May, 1965. Records of this court indicate that the attorney was born in October, 1935.

ognized the asserted advanced age of an attorney as a substantial mitigating factor. Cf. *Matter of Bryan*, 411 Mass. 288, 291 (1991) (attorney's youth and inexperience asserted as mitigating factor). We see no logical reason for making the advanced age of an attorney a significant factor in selecting the appropriate level of discipline. An older, experienced attorney should understand ethical obligations to a greater degree than a neophyte. See ABA Standards § 9.22 (i), listing "substantial experience in the practice of law" as an aggravating factor. Compare ABA Standards § 9.32 (f), listing "inexperience in the practice of law" as a mitigating factor.

An indefinite suspension is the appropriate discipline to impose. The attorney's multiple violations of his professional obligations, two of which standing alone call for a suspension, make our conclusion unavoidable. The facts asserted in mitigation do not come close to overcoming the presumptively appropriate sanction. We agree with the Board that a three-year suspension would be markedly disparate from the sanctions imposed in similar cases of (a) the intentional misuse of clients' funds with deprivation and (b) association with a nonlawyer to conduct legal business. However one may compare the facts of the attorney's deprivation of client funds in this case with the facts in other cases involving the misuse of client funds, in deciding the appropriate sanction the circumstances of the attorney's association with James Ryan in the unauthorized practice of law make the results of any comparison of sanctions unimportant.

We consider one additional matter that has no influence on our reasoning, and the attorney does not argue that it should. As we mentioned at the outset of this opinion, the attorney and bar counsel agreed to the relevant facts and jointly recommended that the Board suspend the attorney from the practice of law for three years. The attorney, represented by counsel, acknowledged "that the Board of Bar Overseers is not bound by the parties' recommendation for discipline" and that he was "bound by the stipulation of facts regardless of the discipline recommended by the Board of Bar Overseers or imposed by the Supreme Judicial Court."

Our object is to impose the appropriate discipline. Neither this court nor the Board should give special force to recommendations of bar counsel as to the level of discipline because they are presented in conjunction with a joint stipulation of facts. The discretionary authority of this court and the Board cannot properly be restricted by the circumstances of the stipulation. It may be that the failure of the Board to follow such joint recommendations will cause attorneys to decline to take the risk of entering into stipulations in the future. But the attorney agreed to the arrangement that is presented to us. He obtained from bar counsel a recommendation more favorable to him than the Board or we could accept. Considering the seriousness of the attorney's disciplinary missteps, almost all of which appear to be demonstrable by objective facts, the attorney's ability to obtain bar counsel's support for the imposition of less than the presumptively appropriate sanction suggests that the stipulation may well have been a tactically sound move by the attorney and his counsel. The stipulation presents no basis, however, for imposing a sanction different from that which would be imposed where the facts were found by a hearing committee of the Board and thereupon bar counsel recommended to the Board a suspension from the practice of law for three years. The attorney does not argue otherwise.

Judgment shall be entered in the usual form suspending the attorney indefinitely from the practice of law.

*So ordered.*