## In the Matter of Kenneth A. Finn.

Suffolk. December 8, 2000. - February 23, 2001.

Present: Marshall, C.J., Greaney, Spina, Cowin, & Sosman, JJ.

*Board of Bar Overseers. Supreme Judicial Court,* Appeal from order of single justice. *Attorney at Law,* Disciplinary proceeding, Public censure, Suspension, Bar application. *Unauthorized Practice of Law.*

This court concluded that, in an attorney disciplinary proceeding, the appropriate discipline to be imposed for an attorney's false statements in a bar application submitted in another State and misrepresentations there about his status as an attorney, his unauthorized practice of law there and use of a deceptive business card and letterhead, and his failure to properly document his handling of client funds, without any mitigating factors, was a three-month suspension from the practice of law. [423-426]

Information filed in the Supreme Judicial Court for the county of Suffolk on August 2, 1999.

The case was heard by *Abrams,* J.

*Cathleen Cavell,* Assistant Bar Counsel.

*Thomas R. Kiley (Thomas B. Drohan* with him) for the respondent.

Spina, J. On July 28, 1998, bar counsel filed with the Board of Bar Overseers (board) a petition for discipline against Kenneth A. Finn (respondent). The petition alleged that from 1991 until 1993 the respondent violated various provisions of the disciplinary rules arising out of misrepresentations on his Georgia bar application, his intentional misrepresentation that he was eligible to practice law in Georgia, his use of deceptive letterhead and business card, and his failure to keep records of the disposition of client funds.[1] The matter was referred to a hearing committee of the board and a public hearing was held

---

[1]The petition alleged violations of the canons of ethics and disciplinary rules in effect through December 31, 1997. S.J.C. Rule 3:07, as amended, 422 Mass. 1301 (1996). As of January 1, 1998, Massachusetts adopted the Massachusetts Rules of Professional Conduct. S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998).

on November 18, 1998. The hearing committee sustained the allegations of intentional misrepresentation on the Georgia bar application, and the unauthorized practice of law in Georgia. The hearing committee recommended that the respondent be publicly reprimanded for his misconduct. Bar counsel appealed from that disciplinary recommendation to the board. On July 12, 1999, the board unanimously adopted the hearing committee's findings of fact and conclusions of law, but rejected the committee's suggested disposition and recommended that the respondent be suspended from the practice of law for three months. The board filed an information with the Supreme Judicial Court for Suffolk County pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). On November 12, 1999, a single justice of this court ordered a public censure.[2] Bar counsel now appeals from the single justice's disposition of a public reprimand and seeks a suspension of no less than three months. The board and the respondent did not cross-appeal. We order a three-month suspension.

1. *Facts.* We summarize the findings of fact made by the hearing committee and adopted by the board. The single justice found these facts to be supported by substantial evidence. The respondent was an undergraduate at Ohio University between September, 1979, and June, 1981. He completed his undergraduate studies at Northeastern University, and subsequently graduated from Northeastern University Law School in June, 1990.

From June, 1980, to November, 1983, the respondent received a total of $10,000 in student loans. In order to obtain the loans, the respondent was required to sign three loan applications and other documents. Several of the signatures were notarized. Additionally, his family members acting for his benefit signed his name on two other student loan applications. The only payment credited to his outstanding loan balance was $168.22 withheld from the respondent's tax refund in May, 1987. In 1989, the guarantor brought suit against the respondent in New York to collect the outstanding balance of the loans. A default judgment was entered against him in the amount of $15,963.44.[3] He did not receive a copy of the summons, the complaint, or the default judgment.

---

[2] "A public censure no longer exists as a disciplinary option. It has been replaced by the public reprimand. S.J.C. Rule 4:01, § 4, as appearing in 415 Mass. 1302 (1993)." *Matter of Ring*, 427 Mass. 186, 190 n.1 (1998).

[3] This amount includes the principal of the loans, accrued interest, and attorney's fees.

The respondent was admitted to the Massachusetts bar in June, 1991. On June 5, 1991, he applied for admission to the Georgia bar. As part of his Georgia application, he completed an application for certification of fitness to practice law (fitness application). Question 19A of the fitness application asked, "Have you *ever* applied for or obtained a student loan?" (emphasis in original). Question 19B of the fitness application asked, "Have you ever defaulted on any student loan?" The respondent checked, "No," in response to both questions. At the end of the fitness application, he executed a notarized verification that stated: "I have read the foregoing questions, and have answered the same fully and frankly. The answers are complete and true of my own knowledge."

In mid-June 1991, the board to determine fitness of applicants of the Supreme Court of Georgia office of bar admissions (fitness board) commenced an investigation into the respondent's fitness. The fitness board learned of the respondent's default on his student loans and the New York judgment against him, and notified him that it was issuing a temporary certificate of fitness to permit him to take the July bar examination but that it would not consider his application until he provided evidence that the default judgment was satisfied or set aside with repayment arrangements in place. In July, 1992, the respondent sat for the Georgia bar examination. In October, 1992, the fitness board informed him that his examination scores would not be released pending receipt of evidence that he had satisfied the default judgment. The respondent did not provide the requested documentation, and therefore was never admitted to practice law in Georgia.

In November, 1992, several months after sitting for the Georgia bar, an automobile accident occurred in front of the respondent's residence. He rendered legal advice to the driver in the automobile accident. The respondent told the driver that he was a Massachusetts attorney who hoped to be admitted in Georgia. He presented the driver with a business card captioned "Law Offices of Finn & Lerner" with addresses in Cambridge, Massachusetts, and Atlanta, Georgia. While the respondent did, at one time, contemplate forming a law practice with Attorney Lerner, no such relationship was ever established. He also held himself out as an attorney to the insurance company of the driver and corresponded with the insurance company on letterhead reading "Law Offices of Ken A. Finn & Associates, 931

Martin Luther King Jr. Dr. NW" (no city or State) and a telephone number with an Atlanta area code. The respondent did not have a law office at that location in Atlanta, nor did he have any associates; and, as discussed above, he was not authorized to practice law in Georgia. He later received[4] a settlement check for property damages from the insurance company payable to him and his client. He indorsed the check and forwarded it to the client without maintaining any record of his receipt or disbursement of the check. When the client had problems cashing the check, the client asked for the respondent's help. The client indorsed the check and returned it to the respondent. The respondent gave the client the full amount of the property settlement in cash and deposited the check in his personal checking account. The respondent made no record of this transaction. Finally, the respondent returned to Massachusetts and sent another letter on behalf of the driver to the insurance company demanding compensation for personal injuries. Months later, the client informed the respondent that he had retained another attorney to settle the claim. The respondent did not receive any part of the settlement.

The hearing committee found that the respondent's testimony that he was unaware that he ever applied for or received any student loans was not credible. It also found that the respondent's answer on his Georgia fitness application relating to his student loans was intentionally false and was a knowing material misrepresentation of fact. Because the respondent did not have actual notice of the default judgment entered in New York, the hearing committee did not find that he intentionally misrepresented the truth as to that matter, but it did find that he acted with reckless disregard for the truth because the interception of his tax refund in 1987 put him on notice that he had defaulted on those loan obligations. The hearing committee noted that the respondent had at least an obligation to verify the status of the loans in order to provide complete and truthful information on the fitness application, and he should have inquired of his family regarding that status.

The hearing committee concluded that the respondent had violated S.J.C. Rule 3:07, Canon 1, DR 1-101 (A), as appearing in 382 Mass. 769 (1981) (making materially false statement in, or deliberately failing to disclose material fact requested in con-

---

[4]The check was addressed to the respondent at 931 Martin Luther King Drive in Atlanta, Georgia.

nection with, application to bar); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 770 (1981) (conduct involving dishonesty, fraud, deceit, or misrepresentation); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 770 (1981) (conduct prejudicial to the administration of justice); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 770 (1981) (conduct adversely reflecting on fitness to practice).

The hearing committee also determined that, by engaging in the practice of law in Georgia when he was not admitted in Georgia and by intentionally misrepresenting to the insurance company that he was eligible to practice law in Georgia, the respondent violated S.J.C. Rule 3:07, Canon 3, DR 3-101 (B), as appearing in 382 Mass. 777 (1981) (unauthorized practice in another jurisdiction); DR 1-102 (A) (4) (dishonesty, fraud, deceit, or misrepresentation); DR 1-102 (A) (5) (conduct prejudicial to the administration of justice); and DR 1-102 (A) (6) (conduct adversely reflecting on fitness to practice law). By distributing a business card with deceptive statements to the driver and by using letterhead with deceptive statements when corresponding with the insurance company, the hearing committee found that the respondent violated S.J.C. Rule 3:07, Canon 2, DR 2-102 (A), as appearing in 382 Mass. 770 (1981) (use of deceptive claim in business card or letterhead). The hearing committee further concluded that, by failing to maintain proper records of the handling and disposition of the driver's settlement, the respondent violated S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (3), as appearing in 419 Mass. 1303 (1995) (failure to maintain proper records of client's property).

The single justice found that the hearing committee's conclusions were warranted. Nevertheless, she concluded that the appropriate sanction was a public censure.[5] In reaching this conclusion, the single justice considered three mitigating factors: the State of Georgia took no action against the respondent; the violations occurred between six and eight years ago; and the respondent currently represents clients from an under-served population.

2. *Standard of review.* The standard for reviewing a sanction

---

[5]As noted above at note 2, the public censure has been replaced by the public reprimand. Because the public reprimand is the lowest form of discipline the single justice could have imposed, we treat her order as one imposing that sanction for purposes of this appeal.

imposed by the single justice is whether it is markedly disparate from judgments in comparable cases. See *Matter of Tobin*, 417 Mass. 81, 88 (1994); *Matter of Neitlich*, 413 Mass. 416, 421 (1992); *Matter of McInerney*, 389 Mass. 528, 529 (1983); *Matter of Alter*, 389 Mass. 153, 156 (1983). While the review is de novo "in the sense that no special deference is given to the single justice's determination, [this court], like the single justice . . . must be 'mindful that the board's recommendation is entitled to substantial deference.' " *Matter of Doyle*, 429 Mass. 1013, 1013 (1999), quoting *Matter of Tobin*, *supra*. "In applying this standard, it is appropriate . . . to consider the cumulative effect of the several violations committed by the respondent." *Matter of Tobin*, *supra*, quoting *Matter of Palmer*, 413 Mass. 33, 38 (1992).

We have applied a different standard where the circumstances of the case are unique or involve a matter of first impression. See *Matter of McInerney*, *supra* at 529-530. In those instances we have reviewed the decision of the single justice to determine whether it is supported by sufficient evidence, constitutes an abuse of discretion, and is free from any error of law. See *id.* at 530. Because we find that there are comparable cases in Massachusetts, we apply the markedly disparate standard.

3. *Bar counsel's appeal.* (a) Bar counsel's challenge concerns solely the sanction imposed. Bar counsel argues that a three-month suspension is warranted in this case because it is the minimum appropriate sanction for a lawyer who lied on a bar application. Bar counsel notes that, although we have never decided a case such as this, there are two single justice decisions involving false or misleading answers to questions in the Massachusetts bar application and a recent order of a single justice concerning a Massachusetts attorney's fraudulent bar application in another State, and therefore comparable cases exist against which the markedly disparate standard may be applied. We agree.

In *Matter of Ruzzo*, 10 Mass. Att'y Discipline Rep. 233, 233 (1994), a lawyer was suspended for one month for denying in his Massachusetts bar application that he had been a party in a non-criminal legal proceeding. The lawyer had been a party in a Pennsylvania Supreme Court action appealing from the denial of his bar application there. *Id.* Similarly, in *Matter of McGarvey*, 15 Mass. Att'y Discipline Rep. 390, 391 (1999), a lawyer who had previously worked as a nurse was suspended

for two months for deliberately failing to disclose material facts in her Massachusetts bar application. In response to a question asking whether she had ever been disbarred, suspended, reprimanded, censured, or otherwise disciplined as an attorney or as a member of any other profession, she answered, "no." *Id.* In fact, she had voluntarily surrendered her nursing license and been placed on probation by the board of registration in nursing for mishandling controlled substances; and she failed to include in her bar application any reference to her employment at the time of that incident. *Id.*

In a recent order of a single justice, a Massachusetts attorney was suspended from the practice of law for an indefinite period for submitting an Arizona bar application under the name of another Massachusetts attorney almost identical to hers and submitting fraudulent documents in support of that application. See *Matter of Marshall*, BD-2000-059 (Nov. 21, 2000). Therefore, in all other single justice decisions involving false statements or material omissions on a bar application, a suspension was imposed. Material misrepresentations and omissions on bar applications and misrepresentations about one's status as an attorney are serious ethical violations. A public reprimand in these circumstances is not appropriate.

(b) Bar counsel also argues that the respondent's unauthorized practice of law, his use of a deceptive business card and letterhead, his failure properly to document the handling of client funds, together with a deceptive bar application, require that a suspension be imposed. The unauthorized practice of law in conjunction with the use of deceptive business cards has resulted in suspension in other cases. See *Matter of Shea*, 7 Mass. Att'y Discipline Rep. 269 (1991) (suspending lawyer for six months for distributing business cards misidentifying himself as Connecticut lawyer and representing clients there without being admitted in that State). The respondent's misrepresentation on his Georgia bar application also warrants a suspension. We take into account the cumulative effect of all violations when determining the appropriate level of discipline. *Matter of Tobin*, 417 Mass. 81, 88 (1994).

4. *Mitigating factors.* In determining what sanction to impose, it is appropriate to consider mitigating factors. See *Matter of Hurley*, 418 Mass. 649, 652 (1994), cert. denied, 514 U.S. 1036 (1995). The single justice considered three mitigating factors in concluding that the respondent should not be suspended from

the practice of law. First, the single justice noted the State of Georgia's failure to impose any sanction on the respondent even though the violations occurred within that State. Bar counsel suggests, without citing any authority, that Georgia could not impose any sanction on the respondent because he has never been admitted to practice law in that State. In at least one case, however, the Supreme Court of Georgia has denied an applicant admission to practice law based on the applicant's "lack of candor by giving incorrect and incomplete answers on his application and on other occasions and by engaging in one act of the unauthorized practice of law." *In re P.H.M.T.*, 272 Ga. 19, 20 (2000). As to the respondent's misrepresentations concerning his student loans, Georgia effectively denied him admission to its bar on condition that he clear up those loans. Because there is no indication on this record that Georgia was even aware of the respondent's unauthorized practice of law there, Georgia's failure to act on that matter is unpersuasive.

The single justice also viewed as mitigation the fact that the violations at issue in this case took place between six and eight years ago. Because there have not been any complaints about the respondent's conduct during that time, the single justice reasoned that a lesser sanction should be imposed. The passage of time is not an appropriate factor in mitigation because many violations otherwise would go unvindicated, a result contrary to the best interests of the legal profession. We consider the absence of any complaints against the respondent for the past eight years a "typical" mitigating factor that does not warrant a reduction in his sanction. See *Matter of Budnitz*, 425 Mass. 1018, 1019 (1997) (not having been subject of any prior discipline is typical mitigation factor and need not be given substantial weight); *Matter of Anderson*, 416 Mass. 521, 527 (1993) (stating excellent reputation in community is typical mitigating factor and warrants no change in disposition).

The last mitigating factor considered by the single justice is the fact that respondent's clients are an under-served population, and suspending him would deny members of the community desperately needed legal services. However commendable his service has been, and however much the temporary loss of that service will burden an under-served community, this is not an appropriate mitigating factor. See *Matter of Modica*, 5 Mass. Att'y Discipline Rep. 258, 260 (1988) (lawyer's bilingual capabilities and his legal services to poor should not cause case

to be treated differently). We find no mitigating factors present in this case that justify the reduction of the sanction to a public censure.

5. *Disposition.* The judgment ordered by the single justice in this case is markedly disparate from the results in similar cases involving solely misrepresentations on bar applications. There are cumulative violations here that warrant the sanction of a suspension. We give substantial deference to the board's recommendation. See *Matter of Doyle,* 429 Mass. 1013 (1999). In this case, the board recommended a suspension of no less than three months. That recommendation is consistent with dispositions in similar cases and promotes the essential goal of evenhandedness. The judgment of the single justice is vacated and the case is remanded to the county court where a judgment suspending the respondent from the practice of law for three months shall be entered.

*So ordered.*